## A98A2073. CROWDER et al. v. LARSON.
(513 SE2d 771)

RUFFIN, Judge.

On March 2, 1996, Sandra Crowder's two young children died when a fire broke out in their mobile home. Crowder and the children's respective fathers, Jimmy Lowry and Stefan Maddox, filed a wrongful death action against Brian Larson, the owner of the land upon which the mobile home was located, contending that he had a duty to furnish the mobile home with a smoke detector. The trial court granted Larson's motion for summary judgment, and plaintiffs appeal. Because Larson violated no duty owed to plaintiffs, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Larson owned approximately 15 acres of real estate in Spalding

County upon which he operated a mobile home park known as Timber Creek. The property was divided into 61 separate mobile home lots, about 40 of which were occupied as of March 2, 1996. Larson personally owned about 25 of these mobile homes, which he leased to tenants. The remaining mobile homes were owned by other individuals, who either resided in the mobile homes themselves or rented them to third parties.

At the time Larson bought the land, April 8, 1993, Howard Foster owned three mobile homes in the park, living in one and renting out the other two. Foster rented the mobile home located on Lot F-2 of the park to Lowry and Crowder, who paid Foster $85 per week pursuant to an oral agreement. Foster paid Larson $150 per month as rent for the lot, also pursuant to an oral agreement. In return, Larson provided water and septic service to the lot. Plaintiffs admit that "it became clear" to them that Foster owned the mobile home and Larson owned the lot.

Although it is not exactly clear when Lowry and Crowder moved into the mobile home, they lived in it for about two years, paying rent directly to Foster. They never had any discussions or dealings with Larson regarding their residency in the mobile home. Larson did not have a key to the mobile home and never entered it. Whenever any repairs were needed to the interior of the mobile home, Foster would perform the repairs or arrange to have them performed. Larson and his property manager, Lamar Summers, testified that they did not have the right to enter the interior of the mobile home except with the permission of the owner. Foster testified that it would have been fine with him if Larson wanted to inspect one of his mobile homes.

On two occasions before March 2, 1996, Crowder's children started fires in the mobile home. Crowder testified that she and Lowry discussed buying a smoke detector, but never did so. On the night of March 2, 1996, another fire broke out in their mobile home, killing two of Crowder's three children. Plaintiffs sued Larson for wrongful death, alleging that he failed to equip the mobile home with a smoke detector. The trial court granted summary judgment to Larson, holding that he had no duty to provide a smoke detector.

1. Plaintiffs contend that OCGA §§ 44-7-13 and 44-7-14 imposed a duty on Larson, as their landlord, to furnish the mobile home with a smoke detector. Although they recognize that they did not have a traditional landlord-tenant relationship with Larson, whom they never met, they claim that because Larson was aware Foster was renting the mobile home out to third parties, they had an implied license to use the real estate as a dwelling place. They contend that such a license created a landlord-tenant relationship between Larson, as landlord, and Crowder and Lowry, as tenants.

Plaintiffs' reasoning suffers from a fundamental flaw in that it

fails to recognize that Larson had no interest whatsoever in the mobile home, but merely owned the land upon which it sat. Plaintiffs do not allege that there was any defect in the land itself, but claim that the mobile home was defective because it lacked a smoke detector. Georgia law is clear that a mobile home that is not permanently affixed to the real estate is not part of the real estate or an improvement thereto, but is "an item of personal property separate and apart from the real property on which it sits." *Poythress v. Wilkins*, 218 Ga. App. 475, 476 (462 SE2d 423) (1995); see also *Griswell v. Columbus Finance Co.*, 220 Ga. App. 803-804 (470 SE2d 256) (1996). Plaintiffs admit that the mobile home in question "was not tied down to the ground in any way." Even accepting plaintiffs' contention that Larson implicitly granted them a license to use the real estate, such a license could not have extended to use of the mobile home, which was personal property owned by Foster. In short, plaintiffs rented the mobile home from Foster, not from Larson.

To the extent that the lack of a smoke detector rendered the mobile home defective, this did not constitute a defect in the real estate, but was a defect in an item of movable personal property rented by plaintiffs from a third party. Plaintiffs have presented no authority to support the proposition that a landowner has a common law duty to ensure that personal property rented by a user of the land from the landowner's tenant is free of internal defects. Such a proposition would essentially render the landowner an insurer of the parties' safety. See generally *Scott v. Housing Auth. &c. of Glennville*, 223 Ga. App. 216 (477 SE2d 325) (1996) (landlord is not an insurer of his tenant's safety). Moreover, such a duty would be difficult for a landowner to fulfill where he does not have the right to enter the personal property for purposes of inspection and repair without the consent of the owner. Accordingly, the trial court did not err in rejecting plaintiffs' argument that Larson had a common law duty to equip the mobile home with a smoke detector.

2. Plaintiffs also argue that various local ordinances and rules of the National Fire Protection Association (NFPA), adopted by the county, required Larson to equip the mobile home with a smoke detector. However, none of these rules and ordinances places a duty on a landowner to ensure that a mobile home owned by another is equipped with a smoke detector, simply because the mobile home is situated on land that he owns.

Plaintiffs in particular rely on NFPA 501A, "Standard for Fire Safety Criteria for Manufactured Home Installations, Sites, and Communities," as support for their contention. Section 4-1 of NFPA 501A states as follows: "*General.* Responsibility for life safety and fire safety within manufactured home communities is that of the owners and operators of the community." Plaintiffs contend that this

general provision required Larson, as owner of the mobile home park, to ensure that each mobile home contained a smoke detector. However, NFPA 501A imposes no duty on the park owner to ensure that all privately owned mobile homes are equipped with a smoke detector. Rather, NFPA 501A requires the park owner to equip all nonresidential *community* buildings with fire detection and alarm systems.

3. Finally, plaintiffs claim that the failure to equip the mobile home with a smoke detector constituted a breach of the implied warranty of habitability. Plaintiffs' brief does not discuss how this implied warranty applies to Larson, who did not lease the mobile home to plaintiffs, but merely recites that a landlord may be liable to a tenant for harm caused by a defective condition in the leased premises that constitutes a breach of the implied warranty of habitability. See *Thompson v. Crownover*, 259 Ga. 126, 129 (3) (381 SE2d 283) (1989). Because Larson did not own the allegedly defective mobile home or lease it to plaintiffs, this contention is without merit.

4. Neither party on appeal addresses the effect of OCGA § 25-2-40, which requires that all dwellings be equipped with smoke detectors but states that "[f]ailure to maintain a smoke detector . . . in violation of this Code section shall not be considered evidence of negligence [and] shall not be considered by the court on any question of liability of any person." OCGA § 25-2-40 (g). OCGA § 25-2-40 does not identify all parties responsible for ensuring compliance with the statute and does not state whether the failure to comply with any *other* applicable laws requiring smoke detectors may be considered evidence of negligence. However, because it is clear that Larson had no duty in this case to furnish the mobile home with a smoke detector, we need not consider the applicability of OCGA § 25-2-40.

*Judgment affirmed. Pope, P. J., and Beasley, P. J., concur.*

DECIDED MARCH 10, 1999.

*Webb, Stuckey & Lindsey, Carlton H. Jones III*, for appellants.
*Lokey & Smith, G. Melton Mobley, Jon W. Burton*, for appellee.